**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christine Baker, | CV 07-8032-PCT-JAT |
| Plaintiff, | **ORDER** |
| vs. | |
| Trans Union LLC, et al., | |
| Defendants. | |

Pending before the Court is Defendant Trans Union's Motion to Dismiss (Doc. #84). The Court now rules on the Motion.

**I. BACKGROUND**

Plaintiff Christine Baker filed a Complaint on June 15th, 2007, alleging violations of the Fair Credit Reporting Act ("FCRA") against, among others, Defendant Trans Union, a credit reporting agency. On April 11, 2008, Ms. Baker sought leave to add new facts and two new causes of action not included in her original Complaint: (1) unjust enrichment; and (2) tortious interference with contractual relations. (Doc. #71). The Court granted Ms. Baker leave to file an Amended Complaint containing the new facts regarding the FCRA claims and a new cause of action for tortious interference with contractual relations, but denied her request to add a claim for unjust enrichment (Doc. #78).

Ms. Baker filed her First Amended Complaint ("FAC") on June 16, 2008 (Doc. #80). In the FAC, she alleges that Defendant Trans Union: 1) willfully and negligently blocked her myFICO credit reports in violation of FCRA §1681g; 2) willfully and negligently sold her credit data to persons without permissible purpose in violation of FCRA §1681b; 3) willfully and negligently failed to maintain reasonable procedures to avoid violations of §1681b in

violation of §1681e; 4) willfully and negligently failed to follow reasonable procedures to assure maximum possible accuracy when preparing her consumer report in violation of FCRA §1681e; 5) willfully and negligently failed to provide complete and correct consumer reports after receiving factual disputes in violation of FCRA§1681i; and 6) tortiously interfered with her contracts with consumers to analyze and attempt to improve their credit scores. (Doc. #80, ¶¶66-70 &86-93). On June 26, 2008, Trans Union moved pursuant to Rule 12(b)(6) to dismiss these claims for failure to state a claim (Doc. #84).

## II. LEGAL STANDARD

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid.*; *Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (C.A.7 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, *see Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *see, e.g., Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (" Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 -65 (2007).

## III. DISCUSSION

### A. FCRA Claims

#### 1. Blocking (FCRA §1681g)

Ms. Baker alleges that for "a number of years" Trans Union has blocked her from

- 2 -

1  obtaining her Trans Union FICO scores at Fair Isaac's consumer site – www.myFICO.com
2  (Doc. #80, FAC ¶43).  She claims that Trans Union's willful and negligent blocking of her
3  myFICO reports violated FCRA §1681g (Doc. #80 ¶66).

4      Section 1681g(a)(1) provides in relevant part: "Every consumer reporting agency
5  shall, upon request, . . ., clearly and accurately disclose to the consumer (1) All Information
6  in the consumer's file at the time of the request . . ."  Section 1681g further provides that
7  "Upon the request of a consumer for a credit score, a consumer reporting agency shall supply
8  to the consumer . . . the current credit score of the consumer or the most recent credit score
9  of the consumer . . .."  15 U.S.C. §1681g(f)(1)(A).

10     In her FAC, Ms. Baker alleges that she could not obtain her credit score from the
11 www.myFICO.com website.  She further alleges that the website is operated by Fair Issac's
12 consumer site, not by Trans Union.  She argues in her response in opposition to Trans
13 Union's motion that it doesn't matter who owns the website (Doc. #93, p. 4).  The Court
14 disagrees.  The statute provides that a credit reporting agency must disclose information to
15 a consumer "upon request."  If the consumer visits a site not owned or operated by Trans
16 Union and requests credit information, then the consumer has not made a request to Trans
17 Union.

18     Because Ms. Baker alleges in the FAC that she could not receive her score from a
19 non-Trans Union website, she has not adequately alleged that she requested information from
20 Trans Union.[1]  Without a request from Ms. Baker, Trans Union could not have violated
21 §1981g's requirements for sharing information.  The Court therefore grants Trans Union's
22 motion to dismiss Ms. Baker's 15 U.S.C. §1681g claim.

23     **2. Permissible Purpose (FCRA §§1681b & e)**

24     The FCRA limits the purposes for which a credit reporting agency ("CRA") may
25 furnish credit reports.  A CRA may provide reports:

---

[1] When deciding the sufficiency of a pleading, the Court looks at the allegations of the pleading.

- 3 -

    (1) In response to the order of a court . . .

    (2) In accordance with the written instructions of the consumer to whom it relates.

    (3) To a person which it has reason to believe –

     (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or

     (B) intends to use the information for employment purposes; or

     (C) intends to use the information in connection with the underwriting of insurance involving the consumer; or

     D) intends to use the information in connection with a determination of the consumer's eligibility for a license or other benefit granted by a governmental instrumentality required by law to consider an applicant's financial responsibility or status; or

     (E) intends to use the information, as a potential investor or servicer, or current insurer, in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation; or

     (F) otherwise has a legitimate business need for the information--

      (I) in connection with a business transaction that is initiated by the consumer; or

      (ii) to review an account to determine whether the consumer continues to meet the terms of the account. . . .

15 U.S.C. §1681b(a).

  Ms. Baker alleges that Trans Union willfully and negligently sold her credit data to persons without permissible purpose in violation of FCRA §1681b. (Doc. #80 ¶67). But Ms. Baker does not allege any facts to support the bald allegation that Trans Union sold the information without permissible purpose. Although it does not require voluminous detail, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Twombly*, 127 S.Ct. at 1965 n.3.

- 4 -

Most of Ms. Baker's allegations do not identify the CRA who allegedly sold the reports – or they name a CRA other than Trans Union. The allegations instead focus on alleged misuse of the reports by NCO and by Dana Capital.

In her FAC, Ms. Baker discusses Trans Union's involvement with three alleged misuses. The first involved her application for a mortgage some time in 2004. As a result of perceived abuses, Ms. Baker sent her complaints to Trans Union, among others, on or about February 12, 2005, requesting that it terminate the accounts for Dana Capital and NCO. The second "misuse" involved NCO obtaining her credit report on June 17, 2005, apparently for the purpose of collecting a debt. Ms. Baker alleges that she wasn't aware of any delinquent accounts, but does not allege that she did not owe a debt. The third incident involved her application for another mortgage on March 5, 2007. She alleges that on that occasion all three CRAs, Trans Union and its co-Defendant CRAs, provided her credit reports to Dana Capital, resold by NCO.

Any allegations regarding the 2004 mortgage application and the subsequent February 2005 letter fail as a matter of law for untimeliness. Ms. Baker cannot rely on events of which she was aware more than two years before she filed her initial complaint. Section 1681p of the FCRA provides:

> An action to enforce any liability created under this subchapter may be brought . . . not later than the earlier of –
>
> (1) 2 years after the date of the discovery by the plaintiff of the violation that is the basis for such liability; or
>
> (2) 5 years after the date on which the violation that is the basis for such liability occurs.

Ms. Baker filed the current action on June 15, 2007 – more than two years after she learned of the problems with her mortgage application. The Court therefore dismisses those claims.

The second and third incidents occurred within the statutorily allowed time. But Ms. Baker's claims regarding those incidents fail for another reason. Both of those incidents involved a permissible use of credit information.

In the FAC, Ms. Baker alleges that NCO obtained her report in June of 2005

- 5 -

"apparently for the purpose of collecting a debt." (Doc. #80 ¶36). Although she alleges that she was not aware of any delinquent accounts and that she did not receive a collection letter, she does not allege that she had not engaged in a credit transaction. She mistakenly argues that she does not have the burden of alleging and proving an impermissible use. As the Plaintiff, she does have that burden.

Ms. Baker further alleges that she again applied for a mortgage in March of 2007 after receiving numerous faxes from Trinity Financial. She maintains that Trans Union provided her credit report to Dana Capital with regard to this transaction. Although Ms. Baker disputes the identity of the party offering the mortgage, she does not dispute that she applied for a mortgage.

As long as a permissible purpose exits, it does not matter whether the creditor itself or the creditor's agent obtains the credit report. *Weidman v. Federal Home Loan Mortg. Corp.* 338 F.Supp.2d 571, 577 (E.D. Pa. 2004)(citing Federal Trade Commission Commentary on the FCRA, 16 C.F.R. Part 600, Appendix, §604, p. 511(2005)). And when a permissible purpose exists, "parties may obtain, and consumer reporting agencies may furnish, consumer reports without the consumers' permission or over their objection." Federal Trade Commission Commentary on the FCRA, 16 C.F.R. Part 600, Appendix, §604, p. 512 (2005); *see also Sterigopoulos & Castro v. First Midwest Bancorp.*, 427 F.3d 1043, 1046-47 (7th Cir. 2005)("[T]he statute does not require that consumers expressly approve each request for a report.").

Supplying credit reports to persons who intend to use the information in connection with the application for a mortgage or to review or collect on a *voluntary* account of the consumer is permissible. *See* 15 U.S.C. §1681b(a)(3)(A) & (F). Not all account collections in connection with a credit transaction are permissible uses. *Pintos v. Pac. Creditors Ass'n*, 504 F.3d 792, 798-99 (9th Cir. 2007). The account must be from a credit transaction in which the consumer directly participated and voluntarily sought credit. *Id*. at 798.

Ms. Baker alleges that she applied for a mortgage (in 2007) and that NCO obtained her credit report in connection with collecting on a debt. She does not allege that she did not

- 6 -

1 owe a debt or that she had an involuntary debt. Because both of these uses are permissible, 2 and Trans Union therefore did not need her permission to share her credit report, her §1681b 3 claims relating to those incidents fail on the face of the FAC.

4 All of Ms. Baker's FCRA §1681b allegations fail to state a claim either because they 5 are untimely or because, per the FAC, they relate to permissible uses. The Court therefore 6 grants Trans Union's motion to dismiss the FCRA §1981b claims.

7 Ms. Baker also makes FCRA §1681e(a) claims based on Trans Union's alleged 8 §1681b violations. Section 1681e(a) directs credit reporting agencies to "maintain 9 reasonable procedures designed to . . . limit the furnishing of consumer reports to the 10 purposes listed under section 1681b of this title." Because the Court has held Ms. Baker 11 failed to state a claim for violation of §1681b, she cannot prevail on a claim for failure to 12 safeguard against §1681b violations. The Court therefore grants Trans Union's motion to 13 dismiss her FCRA §1681e(a) claim.

### 3. Inaccurate Reports (FCRA §1681e(b))

15 In paragraphs 39 through 42 of the FAC, Ms. Baker alleges that Trans Union split her 16 credit file into two reports. One of these reports did not contain her bankruptcy. As a result, 17 she alleges, Chase pre-approved her for a credit card based on a report that did not contain 18 the bankruptcy, then declined her in August of 2005 when Chase received the credit report 19 with the bankruptcy. (Doc. #80 ¶¶40-41). She claims Trans Union's credit inquiry regarding 20 the "pre-approved" card lowered her credit scores. (Doc. #80 ¶42). Ms. Baker alleges that 21 Trans Union's maintenance of two credit reports violated section 1681e(b) of the FCRA by 22 failing to follow reasonable procedures to assure the accuracy of her credit report.

23 Section 1681e(b) of the FCRA provides: "Whenever a consumer reporting agency 24 prepares a consumer report it shall follow reasonable procedures to assure maximum possible 25 accuracy of the information concerning the individual about whom the report relates." To 26 make out a prima facie violation of section 1681e(b), Ms. Baker must "present evidence 27 tending to show that a credit reporting agency prepared a report containing inaccurate 28 information." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).

On a motion to dismiss, the Court need determine only whether Ms. Baker has made a prima facie showing.

The FCRA does not define "accurate," and "accuracy is not a self-defining concept." *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1158 (11th Cir. 1991). Even a report that contains no patently false information and is therefore "technically" accurate, may be inaccurate under the FCRA if it is incomplete or misleading. *See, e.g.*, *Dalton v. Capital Assoc. Indus.*, 257 F.3d 409, 415 (4th Cir. 2001)(internal citations omitted); *Sepulvado v. CSC Credit Serv., Inc.*, 158 F.3d 890, 895-96 (5th Cir. 1998)(internal citations omitted); *Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37, 40 (D.C. Cir. 1984).[2]

In the FAC, Ms. Baker alleges that Trans Union split her credit file into two reports for several years. (Doc. #80 ¶39). She further alleges that one of these files did not contain her bankruptcy, which caused Chase to pre-approve her for a credit card, then turn her down in August of 2005 after receiving the credit report containing the bankruptcy.[3] Ms. Baker

---

[2] There is another line of cases holding that technical accuracy is sufficient to meet the requirements of the FCRA. *See, e.g., Heupel v. Trans Union LLC*, 193 F.Supp.2d 1234, 1240-1241 (N.D. Ala. 2002); *Todd v. Associated Credit Bureau Servs., Inc.*, 451 F.Supp. 447, 448 (E.D.Pa.1977), aff'd, 578 F.2d 1376 (3rd Cir.1978). The Court, however, agrees with the following analysis from *Koropoulos*:

> Congress did not limit the Act's mandate to reasonable procedures to assure only technical accuracy; to the contrary, the Act requires reasonable procedures to assure "maximum accuracy." The Act's self-stated purpose is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit ... in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information."15 U.S.C. §1681e(b). Certainly reports containing factually correct information that nonetheless mislead their readers are neither maximally accurate nor fair to the consumer who is the subject of the reports.

734 F.2d at 40.

[3] The timing of the pre-approval and subsequent rejection of the Chase credit card application presumably brings it within the statutory limitation.

- 8 -

claims that Chase's credit inquiry lowered her credit scores.

When deciding a motion to dismiss for failure to state a claim, the Court must accept all of Plaintiff's well-pleaded factual allegations as true. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). The Court therefore must assume that Trans Union did in fact maintain separate credit reports for Ms. Baker and that one at least one of the reports was incomplete. The Court must also assume that Chase did in fact pre-approve Baker for a credit card after viewing a credit report without the bankruptcy, then decline her acceptance after viewing a different report.

The Court finds that if Trans Union maintained a credit report on Ms. Baker that contained a bankruptcy and another report that did not, then the report without the bankruptcy could be incomplete and misleading. At this early stage, Ms. Baker therefore has met her prima facie burden of alleging that Trans Union prepared a report containing inaccurate information. The Court's finding regarding the §1681e(b) claim at the pleading stage, does not necessarily mean Ms. Baker's claim could survive a motion for summary judgment after discovery.

### 4. Dispute Regarding Credit Report (FCRA §1681i)

Ms. Baker claims that Trans Union willfully and negligently failed to provide complete and correct consumer reports after receiving factual disputes in violation of 15 U.S.C. §1681i. That section provides in pertinent part:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

15 U.S.C.A. § 1681i(a)(1)(A). In order to prevail on a §1681i(a) claim, Ms. Baker must establish: 1) she notified Trans Union of a disputed item in her credit file; 2) Trans Union failed to reinvestigate free of charge and either record the current status of the disputed

information or delete the item from the file as required by §1681i(a)(5) within the 30-day period; 3) Trans Union's failure to comply with the statute was negligent; and 4) Trans Union's failure caused Ms. Baker injury.  *Acton v. Bank One Corp.*, 293 F.Supp.2d 1092, 1098 (D. Ariz. 2003).

Ms. Baker alleges she requested for years[4] that Trans Union merge her two separate credit file reports into one credit report and that Trans Union never did so.  (Doc. #80 ¶39).  Ms. Baker's request to merge the two reports could be construed as a factual dispute under §1681i(a).  But while she has alleged Trans Union did not merge her two reports, she has not alleged that they failed to conduct a reasonable reinvestigation into the matter.  Because, on her second try, she still has not pleaded one of the required elements of a §1681i(a) claim, the Court will grant the motion to dismiss that claim.

**B.  Tortious Interference Claim**

Ms. Baker has alleged that Trans Union tortiously interfered with her contracts with her customers.  (Doc. #80 ¶¶85-93).  Ms. Baker contracts with consumers to analyze their credit reports and scores, draft disputes on their behalf, and recommend specific actions to improve their FICO scores.  (Doc. #80 ¶86).  She alleges that Trans Union interfered with her contracts with those customers by refusing to correct disputed consumer credit data, which also led to her refusing to take other clients for fear she could not help them.  (Doc. #80 ¶¶61-64 & 88-90).

The five elements of a prima facie case for tortious interference with contractual relations are: "(1) existence of a valid contractual relationship, (2) knowledge of the relationship on the part of the interferor, (3) intentional interference inducing or causing a breach, (4) resultant damage to the party whose relationship has been disrupted, and (5) that the defendant acted improperly."  *Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 31 (Ariz. 2002).

---

[4]Ms. Baker has not alleged when she notified Trans Union of the incompleteness of her credit report.  The Court therefore cannot determine from the face of the FAC whether her §1681i claim is untimely.

- 10 -

Although Federal Rule of Civil Procedure Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," it does require "more than labels and conclusions" and a mere "formulaic recitation of the elements of a cause of action." *Twombly*, 127 S.Ct. at 1964-65.  Other than her bare recitation of the knowledge element of the tortious interference claim (Doc. #80 ¶87), Ms. Baker has alleged nothing that indicates that Trans Union, a huge credit reporting agency, knew of her individual contracts with her customers.  Nor has she alleged anything that indicates Trans Union knowingly interfered in her relationships with those customers or acted improperly when it refused to resolve factual disputes in the manner requested by Ms. Baker or her customers.  Because Ms. Baker has not sufficiently pleaded the elements of a tortious interference claim, the Court will dismiss that claim.

**C.  Conclusion**

The Court will grant Trans Union's Motion to Dismiss with regard to Ms. Baker's §1681g, §1681b, §1681e(a), and §1681i claims, and her tortious interference claim.  Ms. Baker's claim for violation of §1681e(b) survives the Motion.

Accordingly,

IT IS ORDERED GRANTING in part and DENYING in part Defendant Trans Union's Motion to Dismiss (Doc. #84).  It is ordered granting the Motion with regard to the §1681g, §1681b, §1681e(a), §1681i, and tortious interference claims against Trans Union. It is ordered denying the motion to dismiss with regard to the §1681e(b) claim against Trans Union.

DATED this 5th day of November, 2008.

James A. Teilborg
United States District Judge