**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christine Baker, | CV 07-8032-PCT-JAT |
| Plaintiff, | **ORDER** |
| vs. | |
| Trans Union LLC, et al., | |
| Defendants. | |

Pending before the Court are Defendant Equifax Information Services LLC's (Equifax) Motion for Summary Judgment (Doc. #149), Defendant Experian Information Solutions, Inc.'s (Experian) Motion for Summary Judgment (Doc. #154), and Defendant Trans Union LLC's (Trans Union) Motion for Summary Judgment (Doc. #151). Trans Union also filed a Motion to Strike Plaintiff's Summary Judgment Evidence (Doc. #168), but because Local Rule of Civil Procedure 7.1(m)(2) specifically prohibits separate objections/motions to strike regarding the admission of evidence on written motions, the Court will deny the Motion. The Court now rules on the Motions for Summary Judgment.

**I. BACKGROUND**

Plaintiff Christine Baker filed a Complaint on June 15th, 2007, alleging violations of the Fair Credit Reporting Act (FCRA) against, among others, Defendants Equifax, Experian, and Trans Union, which are all credit reporting agencies (CRAs) under the FCRA. On April 11, 2008, Ms. Baker sought leave to add new facts and two new causes of action not included

in her original Complaint: (1) unjust enrichment and (2) tortious interference with contractual relations. (Doc. #71). The Court granted Ms. Baker leave to file an Amended Complaint containing the new facts regarding the FCRA claims and a new cause of action for tortious interference with contractual relations, but denied her request to add a claim for unjust enrichment (Doc. #78).

Ms. Baker filed her First Amended Complaint ("FAC") on June 16, 2008 (Doc. #80). In the FAC, she alleges that Defendant Trans Union: 1) willfully and negligently blocked her myFICO credit reports in violation of FCRA §1681g; 2) willfully and negligently sold her credit data to persons without permissible purpose in violation of FCRA §1681b; 3) willfully and negligently failed to maintain reasonable procedures to avoid violations of §1681b in violation of §1681e; 4) willfully and negligently failed to follow reasonable procedures to assure maximum possible accuracy when preparing her consumer report in violation of FCRA §1681e; 5) willfully and negligently failed to provide complete and correct consumer reports after receiving factual disputes in violation of FCRA§1681i; and 6) tortiously interfered with her contracts with consumers to analyze and attempt to improve their credit scores. (Doc. #80, ¶¶66-70 &86-93).

She also alleges that Defendant Equifax: (1) willfully and negligently sold her credit data without a permissible purpose in violation of FCRA §1681(b); (2) willfully and negligently failed to maintain reasonable procedures to avoid violations of §1681b in violation of FCRA §1681e; and (3) willfully and negligently reported a fictitious fraud alert in violation of FCRA §1681c-1. With regard to Defendant Experian, Ms. Baker alleges that Experian: (1) willfully and negligently sold her credit data without a permissible purpose in violation of FCRA §1681(b) and (2) willfully and negligently failed to maintain reasonable procedures to avoid violations of §1681b in violation of FCRA §1681e.

On June 26, 2008, Trans Union moved to dismiss the claims against it for failure to state a claim (Doc. #84). The Court granted the Motion as to Ms. Baker's claims against Trans Union for willfully and negligently blocking her myFICO credit score, willfully and

negligently selling her credit data without permissible purpose, willfully and negligently failing to maintain reasonable procedures to avoid violations of §1681b, willfully and negligently failing to provide complete and correct consumer reports after receiving factual disputes, and for tortious interference; but denied Trans Union's Motion as to her claim that Trans Union willfully and negligently failed to follow reasonable procedures to assure maximum possible accuracy when preparing her consumer report in violation of FCRA §1681e. (Doc. #113). Equifax, Experian, and Trans Union filed their pending Motions for Summary Judgment on June 1, 2009.

## II. LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, summary judgment is mandated, ". . . against a party who fails to make a showing sufficient to establish evidence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id*. at 323. The burden then shifts to the non-movant to establish the existence of material fact. *Id*. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed.R.Civ.P. 56(e)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id*. at 247-48. However,

in the summary judgment context, the Court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

**III. ANALYSIS**

**A. Equifax's Motion**

Defendant Equifax is a CRA that maintains a database that includes a credit file for Ms. Baker. Ms. Baker alleges that Equifax sold her credit information to third parties without permissible purpose, failed to maintain reasonable procedures to avoid selling credit information without permissible purpose, and reported a false fraud alert on her credit file, which she claims violated FCRA §1681c-1.

**1. Section 1681(b)**

The FCRA limits the purposes for which a CRA may furnish credit reports. A CRA may provide reports:

> (1) In response to the order of a court . . .
>
> (2) In accordance with the written instructions of the consumer to whom it relates.
>
> (3) To a person which it has reason to believe –
>
> (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or
>
> (B) intends to use the information for employment purposes; or
>
> (C) intends to use the information in connection with the underwriting of insurance involving the consumer; or
>
> D) intends to use the information in connection with a determination of the consumer's eligibility for a license or other benefit granted by a governmental instrumentality required by law to consider an applicant's financial responsibility or status; or
>
> (E) intends to use the information, as a potential investor or servicer, or current insurer, in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation; or

> > (F) otherwise has a legitimate business need for the information--
>
> > > (I) in connection with a business transaction that is initiated by the consumer; or
>
> > > (ii) to review an account to determine whether the consumer continues to meet the terms of the account. . . .

15 U.S.C. §1681b(a).

Ms. Baker alleges that Equifax willfully and negligently sold her credit data to persons without permissible purpose in violation of FCRA §1681b. (Doc. #80 ¶67). Her §1681b allegations against Equifax involve a transaction in March of 2007. Ms. Baker undisputedly applied for a mortgage on March 5, 2007. She alleges that after her application, Equifax improperly issued her credit data to Dana Capital, through NCO Financial Systems.

As long as a permissible purpose exits, it does not matter whether the creditor itself or the creditor's agent obtains the credit report. *Weidman v. Federal Home Loan Mortg. Corp.* 338 F.Supp.2d 571, 577 (E.D. Pa. 2004)(citing Federal Trade Commission Commentary on the FCRA, 16 C.F.R. Part 600, Appendix, §604, p. 511(2005)). And when a permissible purpose exists, "parties may obtain, and consumer reporting agencies may furnish, consumer reports without the consumers' permission or over their objection." Federal Trade Commission Commentary on the FCRA, 16 C.F.R. Part 600, Appendix, §604, p. 512 (2005); *see also Sterigopoulos & Castro v. First Midwest Bancorp.*, 427 F.3d 1043, 1046-47 (7th Cir. 2005)("[T]he statute does not require that consumers expressly approve each request for a report.").

Supplying credit reports to persons who intend to use the information in connection with the application for a mortgage, a credit transaction, is permissible. *See* 15 U.S.C. §1681b(a)(3)(A). Because Equifax shared Ms. Baker's credit information in connection with a permissible use, and Equifax therefore did not need her permission to share her credit report, her §1681b claim relating to the mortgage application fails. The Court therefore grants summary judgment to Equifax on Ms. Baker's §1681b claim.

**2. FCRA §1681e(a)**

Ms. Baker also makes an FCRA §1681e(a) claim based on Equifax's alleged §1681b violation. Section 1681e(a) directs CRAs to "maintain reasonable procedures designed to . . . limit the furnishing of consumer reports to the purposes listed under section 1681b of this title." The Court has held that Ms. Baker's §1681b claim fails as a matter of law, and Ms. Baker has introduced no other evidence that would create an issue of fact regarding the reasonableness of Equifax's procedures for avoiding the impermissible sharing of credit information. The Court therefore grants summary judgment to Equifax on Ms. Baker's §1681e(a) claim.

**3. FCRA §1681c-1**

Ms. Baker alleges that Equifax violated §1681c-1 by placing a fraud alert on her credit file against her wishes. On October 25, 2005, Equifax received a dispute from Ms. Baker regarding her Target and Capital One accounts. Equifax concedes that it investigated the dispute, but argues that its records clearly show it did not place a fraud alert on her credit file in response. Ms. Baker has never seen a copy of her credit report showing a fraud alert, but produced the Declaration of Kimberly Hughes, an Experian employee, from another lawsuit, which states that "On October 26, 2005, Experian received a notification that . . . Equifax . . . had added a fraud alert to Plaintiff's credit file." (Doc. #165-3, p. 88, ¶33.)

Section 1681c-1 provides:

> Upon the direct request of a consumer, or an individual action on behalf of or as a personal representative of a consumer, who asserts in good faith a suspicion that the consumer has been or is about to become a victim of fraud or related crime, including identity theft, a consumer reporting agency . . . that maintains a file on the consumer and has received appropriate proof of the identity of the requester shall include a fraud alert in the file of that consumer, and also provide that alert along with any credit score generated in using that file, for a period of not less than 90 days, beginning on the date of such request, unless the consumer or such representative requests that such fraud alert be removed before the end of such period, and the agency has received appropriate proof of the identity of the requester for such purpose.

§1681c-1(a)(1)(A).

Section 1681c-1 addresses the failure to add a fraud alert upon an appropriate request to do so. By its terms, it does not regulate a CRA's placement of a fraud alert on a consumer's account without the consumer's permission. Ms. Baker has not provided the Court with any authority that would support a violation of §1681c-1 under the circumstances of this case. The Court therefore will grant summary judgment to Equifax on Ms. Baker's §1681c-1 claim.

Ms. Baker alleged that Equifax violated three sections of the FCRA. Because the Court has held that her claims under all three sections fail as a matter of law, the Court will grant summary judgment to Equifax.

**B. Experian's Motion**

Ms. Baker's two claims against Experian arise from her mortgage application of March 5, 2007. Experian also provided credit information to Dana Capital, through NCO Financial Systems, in response to the application. Ms. Baker alleges that by providing credit data to Dana Capital, Experian willfully and negligently sold her credit data to persons without permissible purpose in violation of FCRA §1681b and failed to maintain reasonable procedures to prevent impermissible uses of credit information in violation of FCRA §1681e(a). For the same reasons outlined in the section above, namely that providing credit information for use with a mortgage application is permissible, Ms. Baker's §§1681b & 1681e(a) claims fail as a matter of law. Because Ms. Baker had only those two claims against Experian, the Court will grant summary judgment to Experian.

**C. Trans Union's Motion**

After the Court's November 6, 2008 Order (Doc. #113) on the Motion to Dismiss, only Ms. Baker's FCRA §1681e(b) claim against Trans Union remains. Ms. Baker alleges that Trans Union split her credit file into two files; that one of those files did not contain her bankruptcy; and that Chase pre-approved her at some point in July or August of 2005 for a credit card based on a credit report that did not contain the bankruptcy, then declined her

after Chase's August 17, 2005 review of the report with the bankruptcy. She argues that Trans Union's maintenance of two credit reports violated section 1681e(b).

Section 1681e(b) of the FCRA provides: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." To prevail on her §1681e(b) claim, Ms. Baker must "present evidence tending to show that a credit reporting agency prepared a report containing inaccurate information." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).

In its earlier Order, the Court held that if Trans Union actually provided a separate credit report on Ms. Baker that did not contain the bankruptcy, that report could be misleading, which could constitute an inaccurate report under §1681e(b). *See, e.g., Koropoulos v. Credit Bureau, Inc.,* 734 F.2d 37, 40 (D.C. Cir. 1984). At the motion to dismiss stage, the Court had to accept as true Ms. Banker's allegations that Trans Union provided Chase with an incomplete or misleading credit report. At the summary judgment stage, Ms. Baker must produce proof sufficient to create a material issue of fact as to whether Trans Union actually provided an inaccurate credit report to Chase.

Ms. Baker makes several unsubstantiated claims in her Response to Trans Union's Motion for Summery Judgment (Doc. #163), but has produced no affirmative evidence that Trans Union provided a credit report to Chase in the relevant time period, let alone that she provided an inaccurate report. Ms. Baker uses words like "apparently" and "must have," but has not demonstrated that Trans Union sold inaccurate credit reports regarding Ms. Baker to any of Trans Union's customers.[1]

Because Ms. Baker has not met her burden of creating a legitimate, material issue of fact regarding whether Trans Union provided inaccurate credit reports to Chase or other

---

[1] Trans Union did maintain two separate internal credit files on Ms. Baker that it shared with her, but Trans Union merged the two files on May 6, 2005 – more than two years before she filed her suit, which is the relevant time period for statute of limitation purposes.

- 8 -

customers, her §1681e(b) claim fails as a matter of law. The Court therefore will grant summary judgment to Trans Union on Ms. Baker's one remaining claim against Trans Union.

Accordingly,

**IT IS ORDERED Granting** the Motions for Summary Judgment of Defendants Equifax (Doc. #149), Experian (Doc. #154), and Trans Union (Doc. #151).

**IT IS FURTHER ORDERED Denying** Trans Union's Motion to Strike Plaintiff's Summary Judgment Evidence (Doc. #168).

**IT IS FURTHER ORDERED** that this Order terminates the case because no claims remain after Plaintiff's voluntary dismissal of Defendants Paduano, Sanfilippo, Dana Smith, Dana Capital Group, and Mutual Benefit Funding on January 22, 2008 (Doc. #51), Plaintiff's acceptance of the Offer of Judgment from Defendant NCO Financial Systems, Inc. (Doc. #145), and the Court's granting of the summary judgment motions.

**IT IS FURTHER ORDERED** that the Clerk shall enter judgment for Plaintiff Christine Baker against Defendant NCO financial Systems, Inc. in the amount of two thousand dollars ($2000) pursuant to her acceptance of the Offer of Judgment (Doc. #145-2) and the that Clerk shall enter judgment for Defendants Equifax Information Services LLC, Experian Information Solutions, Inc., and Trans Union against Plaintiff pursuant to this Order.

DATED this 19th day of November, 2009.

James A. Teilborg
United States District Judge